Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| EXCELLENCE SAN LORENZO LLC<br><br>Apelantes<br><br>v.<br><br>ENERGY PARTNERS LLC<br><br>Apelados | KLAN202400555 | Apelación procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente)<br><br>Caso Núm.: SL2023CV00281 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

La parte apelante, Excellence San Lorenzo LLC, representada por su Presidente, el señor Juan Ruiz Martínez, comparece ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Caguas, el 8 de mayo de 2024, notificada el 9 de mayo de 2024. Mediante la misma, el foro primario desestimó, con perjuicio, una acción civil sobre *injunction* estatutario al amparo de lo dispuesto en la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada, Ley 161-2009, 23 LPRA sec. 9011 *et seq.*, promovida en contra de los aquí apelados, Energy Partners LLC (Energy), y la Oficina de Gerencia de Permisos (OGPe).

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

### I

El 15 de agosto de 2023, la parte apelante presentó la demanda de epígrafe. En esencia, expuso que, con fecha del 16 de

enero de 2023, la OGPe expidió un *Permiso de Construcción* a la apelada Energy, con número 2021-375103-PCOC-032069, para la remodelación de una estación de gasolina cuya operación, adujo, se había descontinuado por más de dos (2) años.  Según alegó, en marzo de 2023, la OGPe expidió a la referida compañía un *Permiso Único*, de número 2023-475185-PU-198041, autorizando el uso y la operación de la estación de gasolina, así como, también de una tienda de conveniencia con venta de bebidas alcohólicas selladas, venta de piezas de auto y cinco (5) máquinas de entretenimiento dentro de las facilidades.

La parte apelante indicó estaba legitimada para impugnar el permiso de uso en controversia, toda vez que se dedicaba a operar una estación de gasolina dentro del radio de mil seiscientos (1,600) metros dispuestos por ley de la ubicación de la estación de la apelada Energy. Al amparo de ello, afirmó que debió haber sido considerada durante el proceso de aprobación del permiso en controversia, toda vez que ostentaba un derecho propietario que se estaba viendo afectado por el uso autorizado de una nueva estación. En apoyo a su postura, planteó que su causa de acción estaba predicada en lo estatuido en el Artículo 14.1 de la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada, Ley 161-2009, 23 LPRA sec. 9024, disposición que provee para, entre otros remedios, la solicitud de interdicto para la revocación de un permiso otorgado cuya solicitud se fundamentó en información incorrecta o falsa.  Sobre ello, afirmó que tal era el caso del permiso concedido a la apelada Energy, puesto que, dado a que el establecimiento en disputa estuvo cerrado por años, la solicitud de permiso que esta propuso, debió haberse evaluado como una de reciente construcción y no de remodelación. A fin de validar su postura, invocó los términos de lo dispuesto en el Artículo 9.6 de la Ley 161-2009, 23 LPRA sec. 9019e. Específicamente, indicó que, de

conformidad con su letra, los permisos se catalogaban como de naturaleza *in rem*, y que, en ningún caso, se habría de requerir la expedición de un nuevo permiso, salvo que el uso permitido fuera interrumpido por un periodo mayor a dos (2) años.

En su demanda, la parte apelante también aludió a lo estatuido en la Ley para Regular la Industria de la Gasolina, Ley Núm. 73 de 23 de junio de 1978, 23 LPRA sec. 1131, *et seq.,* según enmendada. Sobre ello, expresó que, respecto a la consulta de ubicación o solicitud de un permiso de construcción, o de uso, de una estación de servicio de venta al detal de gasolina, la referida disposición expresamente exigía que estos vinieran acompañados de un estudio de viabilidad económica que justificara la necesidad y conveniencia de la misma. Al abundar, expresó que, de conformidad con la Ley Núm. 73, *supra,* el referido estudio de viabilidad debía contener, entre otros datos, información sobre la concentración poblacional y de tránsito vehicular del área, los negocios similares existentes dentro de un perímetro de mil seiscientos (1,600) metros radiales, y el impacto anticipado del nuevo establecimiento sobre aquellos de naturaleza similar dentro del perímetro legal establecido. A su vez, la parte apelante expuso que, dentro del proceso para expedir permisos de uso, la referida Ley también exigía la celebración de vistas públicas, con notificación previa a, entre otros entes, los distribuidores, mayoristas, dueños o arrendatarios de todas las estaciones de gasolina sitas dentro de los mil seiscientos (1,600) metros radiales.

A tenor con lo antes expuesto, la parte apelante expresó que, en el caso de autos, se incumplieron todas las exigencias legales pertinentes al proceso de gestionar el permiso de uso en controversia. Así, amparándose en dicha afirmación, sostuvo que procedía decretarse la nulidad del *Permiso de Construcción* número 2021-375103-PCOC-032069, así como el *Permiso Único* de uso

número 2023-475185-PU-198041, ambos expedidos a favor de la apelada Energy. A su vez, la parte apelante solicitó que se ordenara la inmediata paralización del uso autorizado de la estación de gasolina en controversia, ello a tenor con las disposiciones de la Ley Núm. Ley 161-2009, *supra.*

El 18 de diciembre de 2023, la apelada Energy presentó una *Moción Solicitando Desestimación.* En la misma, expuso que, en la demanda de epígrafe, la parte apelante reprodujo los mismos argumentos que expuso ante la OGPe mediante la querella administrativa 2022-SIN-00816, ello a los fines de impugnar la legitimidad de los permisos en disputa. Añadió que, una vez los mismos fueron expedidos por el referido organismo, la parte apelante no agotó los remedios administrativos pertinentes para impugnar la determinación de la agencia, mediante la oportuna presentación de una solicitud de revisión ante la División de Revisiones Administrativas de la OGPe. A tenor con ello, la apelada Energy, levantó la defensa de cosa juzgada y sostuvo que, dado a que la expedición de los permisos en disputa advino a ser final y firme, la parte apelante estaba impedida de someter a la consideración judicial un asunto que quedó debidamente adjudicado.

De otra parte, en el pliego, la apelada Energy también argumentó que el reclamo de la parte apelante incumplía con los criterios medulares para que se emitiera un interdicto preliminar a su favor, a la luz de las exigencias de la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3. A su vez, planteó que, según resuelto por el estado de derecho, la no operación de una estación de gasolina, no equivale a un cambio de uso. Añadió, por igual, que el Artículo 9.10 de la Ley 161-2009, *supra*, establece una presunción de validez en cuanto a las determinaciones finales de las agencias y sobre la expedición de permisos por parte de la OGPe, que solo se

puede derrotar cuando medie fraude, dolo, engaño, extorsión, soborno, o la comisión de algún delito en el otorgamiento del permiso final. Sostuvo que la parte apelante nunca alegó, ni demostró, que tales condiciones hubiesen concurrido, por lo que se reafirmó en la validez del proceso de expedición de permisos impugnado en la demanda de epígrafe. A su vez, añadió que el único argumento que esta presentó se ceñía a sostener que, la estación de gasolina autorizada, estuvo sin operar por más de dos (2) años y que dicho dato, alegadamente, no se informó a la OGPe. Sobre tal particular, la apelada Energy afirmó que la parte apelante nunca expuso hechos concretos constitutivos de alguna acción contraria a ley relacionada a sus afirmaciones. Al abundar, indicó que, contrario a lo aducido en su contra, dada la reclamación agencial de la parte apelante mediante la querella antes aludida, la OGPe conocía dicha información, la cual, sostuvo, consideró al expedir los permisos en disputa.

La apelada Energy se reafirmó en que, al solicitar la expedición de un remedio extraordinario de *injunction*, la parte apelante pretendía obtener, por la vía judicial, la revocación del permiso de uso controversia, relitigando, de este modo, un asunto que fue adjudicado con finalidad en la esfera administrativa. A tenor con dicho argumento, reprodujo nuevamente la defensa de cosa juzgada, ello dado a que la parte apelante nunca solicitó la revisión administrativa de la acción agencial impugnada. De este modo, al amparo de dicho argumento, y reafirmándose en que esta no demostró que habría de sufrir un daño real, así como, tampoco, la ilegalidad de la expedición de los permisos objeto de disputa entre las partes, ni los criterios establecidos en el ordenamiento procesal para la expedición de un *injunction*, la apelada Energy solicitó al Tribunal de Primera Instancia la desestimación de la causa de acción de epígrafe.

El 19 de diciembre de 2023, la apelada Energy presentó una *Moción Suplementando Solicitud de Desestimación.* En lo pertinente, se reafirmó en el hecho de que, previo a la presentación de la demanda de autos, la parte apelante presentó una querella ante la Junta de Planificación al amparo de los mismos argumentos sometidos a la consideración del tribunal. Añadió que, a pesar de que, en la demanda de epígrafe, la parte apelante mencionó que la Junta de Planificación no atendió dicho reclamo, de la *Resolución de Archivo* emitida por el referido organismo el 17 de abril de 2023, expresamente surgía que se habían considerado las alegaciones de la querella administrativa. Al respecto, sostuvo que el dictamen de referencia directamente aludió a que los hechos planteados en la querella en controversia, no establecían violación legal alguna que suprimiera la legalidad de la concesión del *Permiso Único* de uso impugnado. A su vez, sostuvo que la *Resolución de Archivo* antes indicada, expresamente advirtió a la parte apelante su derecho a solicitar la reconsideración de la misma, así como el derecho de revisión judicial correspondiente. La apelada Energy se reafirmó en que, respecto a este dictamen, la parte apelante tampoco ejerció el correspondiente derecho de revisión dentro del término dispuesto, pese a haberle sido correctamente notificado. La apelada Energy acompañó su *Moción Suplementando Solicitud de Desestimación* con copia de la *Resolución de Archivo* de referencia.

Así las cosas, el 20 de diciembre de 2023, se celebró una vista en la que participaron todas las partes involucradas. Conforme surge de la *Minuta* correspondiente, tras escuchar los argumentos de los comparecientes, el Tribunal de Primera Instancia extendió un término cierto a la parte apelante para presentar, por escrito, sus argumentos en oposición a la desestimación solicitada por la apelada Energy. De igual modo, el foro *a quo* dispuso para que, una

vez sometida la oposición pertinente, la apelada Energy replicara a la misma dentro de un plazo de diez (10) días.

En cumplimiento con lo ordenado, el 9 de enero de 2024, la parte apelante presentó *Moción en Réplica a Mociones en Solicitud de Desestimación del Recurso de Injunction Estatutario a Tenor con el Artículo 14.1 de la Ley 161 de 2009, Según Enmendada.* En lo atinente, indicó que la querella ante la Junta de Planificación se presentó el 21 de agosto de 2022, y que no fue, sino, hasta el 17 de abril de 2023, cuando la Junta de Planificación adjudicó la misma, ello en exceso del plazo de sesenta (60) días establecido a dichos fines en el Artículo 14.7 de la Ley 161-2009, *supra.* Igualmente, al expresarse en torno al remedio extraordinario que solicitó mediante la causa de acción de epígrafe, la parte apelante se reafirmó en que el mismo estaba predicado en lo estatuido en el Artículo 14.1 de la Ley 161-2009, *supra*, por lo que, dada su naturaleza, y contrario a lo aducido por la apelada Energy, no tenía que demostrar que habría de sufrir un daño irreparable a causa de la acción agencial impugnada. Al abundar, indicó que la adjudicación del *injuction* estatutario provisto por la referida disposición, distaba de la consideración empleada respecto al *injunction* tradicional regulado por las Reglas de Procedimiento Civil, toda vez que la misma estaba expresamente delineada por la Ley. En específico, sostuvo que, al entender sobre una solicitud de *injunction* al amparo del Artículo 14.1, *supra,* el tribunal estaba llamado a examinar la prueba presentada a la luz de una alegación relativa a la obtención ilegal de un permiso o a la transgresión específica de alguna disposición de ley, sin ulterior exigencia.

De igual modo, en su pliego, la parte apelante se reafirmó en que no era de aplicación al caso la defensa de cosa juzgada. A su vez, nuevamente planteó que, en la concesión del permiso de uso en disputa, no se observó un proceso justo a la luz de las prerrogativas

concedidas por todas las disposiciones legales pertinentes al proceso. En particular, indicó que medió una violación al debido proceso de ley de los operarios detallistas de gasolina cuyo negocio ubicaba en el perímetro legal establecido, toda vez que el alegado incumplimiento de las exigencias legales y reglamentarias para la concesión del permiso de uso en disputa, incidió sobre su interés propietario.

Por otra parte, y en el ánimo de prevalecer, la parte apelante una vez más invocó los términos del Artículo 9.6 de la Ley 161-2009, *supra*, ello en cuanto a que el uso autorizado mediante la expedición del permiso correspondiente, estaba condicionado a que no hubiese sido interrumpido por espacio de dos (2) años previo a la presentación de la solicitud de uso pertinente. En cuanto dicho particular, se reafirmó en que la apelada Energy no estuvo en operación durante los dos (2) años anteriores a la solicitud de la expedición de los permisos de construcción y uso en controversia, hecho que, a su juicio, establecía el incumplimiento de las normas, criterios y procedimientos aplicables. Así, en virtud de todo lo antes expuesto, la parte apelante solicitó que denegara la desestimación solicitada por la apelada Energy.

El 9 de mayo de 2024, el Tribunal de Primera Instancia notificó la *Sentencia* aquí apelada. Mediante la misma, resolvió que resultaba improcedente disponer del planteamiento sobre cosa juzgada propuesto por la apelada Energy, toda vez que el remedio interdictal establecido en el Artículo 14.1 de la Ley 161-2009, *supra*, era uno independiente a los trámites acontecidos ante las agencias administrativas a cargo de otorgar los permisos objeto de litigio. Ahora bien, al expresarse en torno a la procedencia del *injunction estatutario* solicitado por la parte apelante, el tribunal sentenciador acogió los planteamientos de la apelada Energy y denegó su expedición. Al exponer su raciocinio, indicó que la interrupción en

la operación de la estación de gasolina de la apelada Energy, no acarreaba la solicitud de un nuevo permiso que conllevara un estudio de viabilidad, según planteado por la parte apelante. Al abundar, indicó que, en efecto, el permiso en controversia era uno de naturaleza *in rem*, cuyo tipo de uso no se varió respecto a aquel al que previamente se destinó la propiedad de la apelada Energy. Así, a tenor con ello, dispuso que, como la propiedad sirvió como una estación de gasolina previo a que se presentara la solicitud de permiso en litigio, no era necesario la expedición de un nuevo permiso. De este modo, y tras sostener que la parte apelante no demostró que el permiso de uso en controversia se expidió mediando fraude, infracción a la ley, ni como producto de haberse ocultado o brindado información falsa, desestimó la acción de epígrafe al amparo de lo dispuesto en la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5).

Inconforme, el 6 junio de 2024, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo, formula los siguientes señalamientos:

> Erró en derecho el TPI al desestimar en su totalidad la solicitud de *injunction* estatutario (Art. 14.1 de la Ley 161-2009, según enmendada), bajo el fundamento de que la demanda dejaba de exponer una reclamación que justificara la concesión de un remedio a tenor con la Regla 10.2 de las Reglas de Procedimiento Civil.

> Erró el TPI al desestimar la presente demanda sin llevar a cabo la celebración de una vista evidenciaria, y recibir prueba documental y testifical sobre los hechos alegados en la demanda y el grado de afectación de esta parte apelante, en violación al remedio interdictal que ofrece el Artículo 14.1, en violación al debido proceso de ley de esta parte, y abusando de su facultad discrecional.

Luego de examinar el expediente de autos y con el beneficio de la comparecencia de ambas partes de epígrafe, estamos en posición de resolver.

**II**

**A**

La Ley Para la Reforma del Proceso de Permisos de Puerto Rico, Ley 161-2009, 23 LPRA sec. 9011, *et seq*, constituye el marco legal y administrativo que rige los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Su objetivo es la transformación del sistema de permisos en Puerto Rico, a fin de que resulte en uno más transparente, ágil, confiable y eficiente. Exposición de Motivos, Ley 161-2009, supra. De igual modo, provee una estructura para la evaluación y otorgamiento de permisos cónsono con las leyes y reglamentos aplicables, todo a los efectos de establecer un equilibrio entre el desarrollo económico, la protección de los recursos naturales y la protección del derecho al disfrute de la propiedad. *Íd.* La Ley 161-2009, supra, creó la Oficina de Gerencia de Permisos (OGPe), organismo adscrito a la Junta de Planificación, que ostenta autoridad legal suficiente para evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico. 23 LPRA sec. 9018.

Pertinente a la controversia que atendemos, el Artículo 1.5 (90) de la Ley 161-2009, *supra,* define el término *uso* como "el propósito para el cual una pertenencia fue diseñada, es ocupada, usada o se pretende usar u ocupar". 23 LPRA sec. 9011(90). De igual modo, en su Artículo 9.6, el referido estatuto define la naturaleza de los permisos a ser autorizados por el organismo competente. Al respecto, dispone como sigue:

> A los fines de esta Ley, los permisos son de naturaleza in rem. En ningún caso se requerirá la expedición de un nuevo permiso, siempre y cuando el uso autorizado, permitido o no conforme legal, continúe siendo de la misma naturaleza y no sea interrumpido por un período mayor de dos (2) años. [...].

23 LPRA sec. 9019e.

La Ley 161-2009, *supra*, establece una presunción legal de corrección en cuanto a las determinaciones finales y la certeza en la concesión de permisos por parte de la OGPe. Sobre este particular, el Artículo 9.10 de la Ley 161-2009, *supra*, reza:

> Se presume la corrección y la legalidad de las determinaciones finales y de los permisos expedidos por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V y por los Profesionales Autorizados. No obstante, cuando medie fraude, dolo, engaño, extorsión, soborno o la comisión de algún otro delito en el otorgamiento o denegación de la determinación final o del permiso, o en aquellos casos en que la estructura represente un riesgo a la salud o la seguridad, a condiciones ambientales o arqueológicas, la determinación final emitida y el permiso otorgado por la Oficina de Gerencia de Permisos, por el Municipio Autónomo con Jerarquía de la I a la V o por el Profesional Autorizado, deberá ser revocado. La estructura se podrá modificar, conservar o demoler, sólo después de que un Tribunal competente así lo determine y siguiendo con el procedimiento judicial establecido en el Capítulo XIV de esta Ley, además de cumplir con el debido proceso de ley.
>
> Además, se dispone que, bajo ninguna circunstancia, una determinación final será suspendida, sin mediar una autorización o mandato judicial de un Tribunal competente o el foro correspondiente, en estricto cumplimiento con el debido proceso de ley. Las disposiciones de este Artículo no crearán un precedente reclamable por terceros ajenos a la propiedad objeto del permiso. Entendiéndose que, sujeto a lo dispuesto en esta Ley, una determinación final se considerará final y firme, o un permiso, y no podrá ser impugnado una vez el solicitante haya cumplido con todos los requisitos establecidos en la notificación de determinación final y haya transcurrido el término de veinte (20) días sin que una parte adversamente afectada por la notificación haya presentado un recurso de revisión o un proceso de revisión administrativa, así como haya transcurrido el término de treinta (30) días para solicitar revisión judicial. No obstante, la parte adversamente afectada por una determinación final, podrá ser revisada sujeto a lo establecido en esta Ley.
>
> […]. 23 LPRA sec. 9019(i).

**B**

Por su parte, la Ley 161-2009, *supra*, provee un remedio extraordinario para que cualquier parte afectada pueda solicitar la revocación de un permiso o la paralización de una obra o de un uso

no autorizado por ley. Sobre este particular, el Artículo 14.1 expresamente dispone:

> La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de injunction, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado o de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

[…]. 23 LPRA sec. 9024.

La letra del Artículo 14.1, *supra,* provee un mecanismo interdictal extraordinario de carácter estatutario y sumario que se limita a la obtención de órdenes para provocar la paralización inmediata, provisional o permanente de usos o actos contrarios a la ley. La norma reconoce que un *injunction* estatutario es independiente de un *injunction* tradicional, por lo que está exento de las exigencias legales que le gobiernan. *Next Step Medical v. Bromedicom et al.,* 190 DPR 474, 486 (2014). El estado de derecho dispone que los criterios para la ejecución del *injunction* tradicional son más rigurosos que los aplicables al *injunction* estatutario. *Íd*; *CBS Outdoor v. Billboard One, Inc.,* 179 DPR 391, 410 (2010). Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley. *Next Step Medical v. Bromedicom et al.,* supra, pág. 486.

El *injunction* estatutario es producto de un mandato legislativo expreso. *ARPe v. Rivera*, 159 DPR 429, 444 (2003).[1] De ahí que, distinto al caso del interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado". *Next Step Medical v. Bromedicom et al.*, supra, pág. 497. Según la interpretación normativa, al momento de presentarse una petición de *injunction* de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley". *ARPe v. Rivera*, supra, pág. 444.

## c

Finalmente, nuestro estado de derecho reconoce e impulsa el interés de que todo litigante tenga su día en corte. *Rivera et al. v. Superior Pkg., Inc. et al.,* 132 DPR 115, 121 (1992). El empleo de los recursos adjudicativos en nuestra jurisdicción se fundamenta en la política judicial que establece que los casos se ventilen en sus méritos de forma rápida, justa y económica. *Amaro González v. First Fed. Savs.,* 132 DPR 1042, 1052 (1993). Considerando eso, la posición doctrinaria en nuestro sistema de ley es salvaguardar, como norma general, el derecho de las partes a su efectivo acceso a los tribunales. *Imp. Vilca, Inc. v. Hogares Creas Inc.,* 118 DPR 679, 686-687 (1987). En consecuencia, la desestimación de un pleito, previo a entrar a considerar los argumentos que en el mismo se plantean, constituye el último recurso al cual se debe acudir, luego de que otros mecanismos resulten ser ineficaces en el orden de administrar la justicia. *SLG Sierra v. Rodríguez,* 163 DPR 738, 746 (2005).

---

[1] Aclaramos que *ARPe v. Rivera*, supra, se resolvió al amparo de la letra del Artículo 28 de la Ley Orgánica de la Junta de Planificación de Puerto Rico Ley Núm. 75 de 24 de junio de 1975, 23 LPRA sec. 72, estatuto derogado por la vigente Ley 161-2009, *supra.* No obstante, dicha disposición, guarda cierta correspondencia con la letra del Artículo 14.1, *supra*, por lo que empleamos la norma jurisprudencial resuelta.

Ahora bien, la Regla 10.2(5) de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2(5), provee para que una parte solicite al foro competente la desestimación de un pleito incoado en su contra, bajo el fundamento de que la reclamación en controversia no justifica la concesión de un remedio. Esta defensa "no está sujeta a la regla general sobre acumulación y renuncia de defensas" establecida en el ordenamiento procesal, y "puede aducirse en cualquier alegación responsiva, en una moción para que se dicte sentencia por las alegaciones e, incluso, luego de comenzado el juicio". *Rivera Candela et al v. Universal Insurance Co.,* 2024 TSPR 99, 214 DPR ___ (2024); *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043, 1066-1067 (2020). En atención a la política pública antes expuesta, para que el referido mecanismo de desestimación proceda en derecho, presupone que se den por correctos y bien alegados los hechos incluidos en la demanda, así como que los mismos se expongan de forma clara y concluyente, sin que de su faz se desprenda margen alguno a dudas. *Costas Elena y otros v. Magic Sport y otros,* 2024 TSPR 13, 213 DPR ___ (2024); *Eagle Security v. Efrón Dorado et al,* 211 DPR 70, 84 (2023); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, pág. 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 504-505 (1994).

De igual forma, la demanda deberá ser interpretada con mayor liberalidad a favor de las alegaciones de la parte demandante, por lo que, recayendo la carga probatoria en el promovente de la moción de desestimación, este viene obligado a demostrar que aquel no tiene derecho a remedio alguno al amparo de los hechos que puedan ser probados en apoyo a su requerimiento. *Rivera Candela et al v. Universal Insurance Co.,* supra; *Dorante v. Wrangler of P.R.,* 145 DPR 408, 414 (1998). En este supuesto, la función judicial estriba en determinar si, aun resolviendo toda incertidumbre en

beneficio de la parte demandante, su demanda es suficiente para constituir una reclamación válida. *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505. Por tanto, si el tribunal estima que una demanda no sobrevive un ataque bajo la mencionada Regla, debe desestimarla sin dar paso a más procedimientos. Así, "[d]e determinar que no cumple con el estándar de plausibilidad, el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento pueden probarse las alegaciones conclusorias". R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 307 (6ta Ed. 2017).

**III**

En la presente causa, la parte apelante plantea que el Tribunal de Primera Instancia erró al desestimar en la solicitud de *injunction* estatutario que promovió al amparo de lo dispuesto en el Artículo 14.1 de la Ley 161-2009, *supra,* bajo el fundamento de que la demanda de autos no expuso una reclamación que justificara la concesión de un remedio en ley. A su vez, aduce que el foro primario incidió al emitir un decreto de desestimación sin celebrar una vista evidenciaria en la que se recibiera prueba sobre los hechos alegados en la demanda, transgrediendo, de este modo, su debido proceso de ley. Habiendo examinado los referidos señalamientos a la luz de los hechos establecidos y el derecho aplicable, se confirma la *Sentencia* apelada.

Un examen del expediente mueve nuestro criterio a coincidir con lo resuelto por el tribunal primario. Al entender sobre los documentos que ante nos obran, no podemos, sino, concluir, que, en su gestión adjudicativa, el tribunal primario aplicó correctamente las normas procesales y sustantivas que gobiernan la materia de autos y que adecuadamente atienden la controversia entre las partes. Tal cual resuelto, aun tomando como ciertos los hechos

alegados en la demanda de epígrafe, los mismos no gozan de la plausibilidad requerida por el ordenamiento civil para proveer para el remedio solicitado. Nos explicamos.

Es la contención de la parte apelante que debió haberse provisto para la expedición del *injunction* estatutario que solicitó al amparo de lo dispuesto en el precitado Artículo 14.1 de la Ley 161-2009, *supra*, y, en consecuencia, para que se dejara sin efecto el *Permiso Único* de uso que se emitió a favor de la apelada Energy. En apoyo a su afirmación, plantea que el uso autorizado para la operación de la estación de gasolina en disputa se produjo en contravención a las leyes aplicables al proceso en cuestión, así como producto de información falsa provista por la parte apelada, lo que debió haber movido el criterio del tribunal primario a conceder el remedio extraordinario solicitado. Es su argumento principal el hecho de que la parte apelada ocultó a la OGPe que la estación de gasolina cuyo uso se autorizó mediante la concesión del permiso impugnado, no operó por más de dos (2) años previo a que se propusieran las solicitudes de remodelación y uso concernidas. A tenor con ello, afirma que resultaba de aplicación al caso lo dispuesto en el Artículo 9.6 de la Ley 161-2009, *supra*, toda vez que, a su juicio, la interrupción en la operación de la estación de gasolina por dicho periodo de tiempo exigía una tramitación de permisos distinta a la autorizada por la OGPe. Erra en su raciocinio.

En principio, sobre la alegación relativa a que la parte apelada, deliberadamente ocultó a la OGPe que la estación de gasolina en controversia estuvo inoperante por espacio de dos (2) años, previo a que mediara la solicitud de permisos en litigio, resolvemos en contrario. Según surge de los documentos de autos, en la querella administrativa que la parte apelante promovió ante la Junta de Planificación, expresamente alegó el asunto sobre la falta

de operación de la estación de gasolina antes aludido.[2] Siendo ello así, tal cual propone la apelante, tanto la Junta de Planificación, como la OGPe, tuvieron conocimiento de dicha información y, considerando la misma, se dispuso, tanto de la querella de referencia, como de las solicitudes de permiso en litigio. Por tanto, ante ello, y en ausencia de prueba en contrario, no podemos imputar a la apelada Energy el haber ocultado una información que el foro administrativo tenía a su haber, ello a instancias de la propia entidad apelante. De este modo, ningún permiso se obtuvo a causa de información incorrecta o falsa, de modo que se hiciera meritoria la revocación del mismo mediante la expedición del *injunction* estatutario solicitado.

Entendemos meritorio aclarar que la Ley 161-2009, *supra,* valida la acción agencial impugnada. El referido estatuto define *uso* como "el propósito para el cual una pertenencia fue diseñada, es ocupada, **usada o se pretende usar u ocupar**". 23 LPRA sec. 9011 (90). La definición del concepto de *uso,* nos lleva a concluir que, en efecto, no se requiere que la propiedad esté operando para el propósito que fue diseñada, pues incluye el concepto que se *pretende usar u ocupar.* Al fijarnos en los términos del Artículo 9.6, *supra,* según invocado por la parte apelante, surge que los permisos son de naturaleza *in* rem, y que la interrupción, o no, de un *uso* previamente autorizado, constituye el criterio rector para determinar si resulta necesario la expedición de un nuevo permiso. En el caso de autos, el tipo de uso al que se destinó la propiedad de la apelada Energy, aun cuando, por un término cierto no operó, no se varió. Así, el hecho de que la estación hubiese estado inoperante por el término en disputa, no afecta la legitimidad del *Permiso Único* de uso en controversia. Por tanto, al autorizar las mejoras solicitadas que

---

[2] Véase Apéndice 20, *Demanda,* Anejos 5 y 6, págs. 104-110.

resultaron en la expedición del mismo, la OGPe actuó a tenor con lo dispuesto en ley. De este modo, por no haberse establecido infracción legal alguna, y en ausencia de alegación concreta y de prueba sobre fraude imputable a la apelada Energy, forzoso es sostener la improcedencia del remedio interdictal solicitado por la parte apelante.

De otro lado, la parte apelante aduce que el Tribunal de Primera Instancia violó su debido proceso de ley, ello al no celebrar una vista evidenciaria que le permitiera presentar prueba a favor de sus alegaciones. Sin embargo, nuevamente distamos de su criterio. En primer lugar, resulta menester destacar que, conforme se desprende del expediente que atendemos, el foro primario le ordenó exponer sus argumentos en oposición a la desestimación solicitada por la apelada Energy, los cuales consideró al momento de emitir el pronunciamiento aquí apelado. Además, habiendo resuelto que, tomados como ciertos los hechos alegados en la demanda de epígrafe, los mismos no establecen infracción legal alguna que amerite la expedición del remedio interdictal especial solicitado. Por tanto, ningún derecho ulterior a los debidamente salvaguardados durante la tramitación de la causa de autos debía garantizarse a la parte apelante.

En mérito de lo antes expuesto, confirmamos el dictamen apelado en toda su extensión. El mismo es cónsono con el derecho procesal y sustantivo aplicable, razón por la cual estamos impedidos de dejar sin efecto sus términos.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.  La Juez Grana Martínez concurre sin voto escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones